[No. 7532]

BOARD OF COUNTY COMMISSIONERS OF OTERO COUNTY v. OTERO IRRIGATION DISTRICT.

1. CONSTITUTIONAL LAW—*Particular Statutes*—The last proviso to section 3460 of the Revised Statutes providing that the county treasurer shall receive for the collection of irrigation district taxes such amount as the directors of the district may allow, not less than $25, nor more than $100, it was contended that the effect of this was (1) to commit the determination of the officer's fee, not to the general assembly, as required by sec. 15 of article XIV of the constitution, but to the directors of the district; and (2) to place the burden of a service rendered to particular individuals, and beneficial to them alone, upon the entire county, in violation of sec. 14, of art. II. But it was held that the constitution does not require that a fee shall be charged for every official act; that the statute

fixes the maximum and minimum of the fee, not leaving it entirely to the discretion of the district; that the general assembly may have been of the opinion that by reason of the operations of the irrigation district, and the watering of the lands therein, there would be an advance in the amount and value of taxable property within its limits, and the total valuation of the county so much enlarged that any extra expense occasioned by the increase of labor imposed upon the treasurer would be more than met, without any increase in the levy, and that in this way those residing without the district would in reality pay nothing on account of such extra service of the treasurer; and the facts upon which the unconstitutionality of the statute was so asserted being shrouded in doubt, and no other contention against its constitutionality being made, the contention was overruled.

2. STATUTES—*Construed—Commissions Collected by County Officers*— The fees and commissions prescribed by Rev. Stat. sec. 2537 are collected by the treasurer, not as his compensation for the particular service, in any case, but for the creation of a fund out of which his salary is to be paid.

3. ——*Irrigation District Taxes*—Under Rev. Stat. sec. 2537 the county treasurer was required to charge and collect commissions upon moneys received by him for irrigation district taxes, under Laws 1901, c. 87, secs. 19-20. The statute makes no distinction in this respect between these and other taxes. After the act of May 3rd, 1905, took effect (Laws 1905 c. 113) and until the amendment of 1907 (Rev. Stat. sec. 3460), no commission was chargeable. Since the act of 1907 commissions are to be collected upon irrigation district taxes, according to the rate prescribed by Rev. Stat. sec. 2537, and go into the fee fund and pass thence to the treasurer on account of his salary.

4. IRRIGATION DISTRICT—*Proceeds of Bonds—Commissions*—The proceeds of the sale of the bonds of an irrigation district come into the hands of the treasurer of the county in which the office of the district is located, not as county treasurer, but as *ex-officio* treasurer of the district. No commissions are to be charged thereon.

*Appeal from Otero District Court*—Hon. J. E. RIZER, Judge.

Mr. G. M. DAMERON, Mr. J. C. GUNTER, and Mr. MALCOLM LINDSEY, for appellant.

Mr. FRED A. SABIN, for appellee.

CHIEF JUSTICE MUSSER delivered the opinion of the court:

This action was brought by the Otero Irrigation District to recover the sum of $5,951.85 from Otero county, alleged to have been retained by the county treasurer, who was also *ex-officio* treasurer of the irrigation district (that district being wholly in the county), as commissions on moneys received by the treasurer for district taxes, and from sales of district bonds from the organization of the district to the first day of July, 1910. The commissions were placed in the county treasurer's fee fund, and from thence turned into the general fund of the county. After a trial the district court found that the treasurer had collected as district taxes, from the date of the organization of the district to May 3, 1905, the sum of $27,037.27, upon which the treasurer was entitled to a commission of $811.12; that from the organization of the district to July 10, 1910, the treasurer had retained as commissions the sum of $5,951.85; that he was entitled to retain but $811.12, and that the district should recover the difference, $5,140.73, for which judgment was rendered. The county appealed from this judgment and insists that it was entitled to retain all of the commissions, while the district asserts that the judgment was right so far as it went, and assigns cross error on the action of the court in permitting the county to retain the $811.12, it being the contention that no commissions were allowable.

In the classification of counties for the purpose of fixing the fees, Otero county was placed in the fourth class. Sec. 2521 Rev. St. Sec. 2537 is as follows:

"The county treasurer shall charge and receive the following fees and commissions: Upon all moneys received by him for town and city taxes, * * * and upon all school taxes in counties of the first class one per cent; in counties of the second class, one per cent; in counties

of every other class, one per cent on school taxes, and two per cent on town and city taxes.

"Upon all moneys received by him for taxes of every other kind in counties of  *  *  *  fourth class, three per cent.  *  *  *

"For receiving all moneys other than taxes in counties of every class, one per cent.

"For each certificate of purchase, in counties of every class, twenty-five cents;  *  *  *

"For each certificate of redemption in counties of every class, twenty-five cents;  *  *  *," etc.

Sec. 2554 provides that all fees collected by county officers shall be paid over to the county treasurer, and be by him kept in separate funds, to be known as the fund of the particular county officer from whom it comes, among which is "The County Treasurer's Commission and Fee Fund;" and the section further provides that all salaries or compensation of the county treasurer, his deputies or assistant clerks, shall be paid out of that fund, and no other, and that any balance left to the credit of any fund, after all the salaries and compensations provided for shall have been paid to the end of the year, shall be placed to the credit of the General Fund. Sec. 2565 places Otero county in the fourth class for the purpose of providing for and regulating the salaries of county officers. Sec. 2570 fixes the salary which county treasurers in counties of the fourth class shall receive as their only compensation and for services at $2,100.00. These statutes mentioned relate to two things: First, fees and commissions. Second, salaries or compensation. The fees and commissions are to be collected by the treasurer, not as his compensation for the particular work for which the fee may be prescribed, but for the purpose of creating a fund out of which his salary or compensation

is to be paid. The $2,100.00 annual salary is what the treasurer gets for all the work that he does. It is compensation for his services.

It is to be observed that sec. 2537 fixes a commission of three per cent in counties of the fourth class on all moneys received by the treasurer for taxes of every kind other than town, city and school taxes, and one per cent for receiving all moneys other than town taxes.

In 1901, the legislature passed an act for the organization and government of irrigation districts. Sess. Laws 1901, p. 198. Sec. 19 of that act made the county treasurer of the county in which the office of any irrigation district is located *ex-officio* district treasurer of that district; made him liable upon his official bond, as provided by law in other cases as county treasurer, for malfeasance, misfeasance or failure to perform any duty, as county or district treasurer, prescribed in the act, and made it his duty to receive and receipt for all moneys belonging to the district. It made it the duty of the county treasurer of each county comprising any irrigation district, in whole or in part, to collect and receipt for all taxes levied as provided in the act, in the same manner, and at the same time, as is required in the receipt for and collection of taxes upon real estate for county purposes. The county treasurer of each county, comprising a portion only of any irrigation district, excepting the county treasurer of the county in which the office of the district was located, was required to remit to the district treasurer, on the first Monday of every month, all the moneys collected or received on account of said district. Every county treasurer was required to keep a Bond Fund, and a General Fund. The Bond Fund comprised all moneys received on account of the interest and principal of the bonds issued by the districts. The General Fund comprised all other moneys received. The district treas-

urer was to pay out of the Bond Fund interest and principal of the bonds of the district when due, and to pay out of the General Fund, only upon order signed by the president, and countersigned by the secretary of the district. The district treasurer was required to report to the board of directors of the district, on the 15th day of each month, the amount of money in his hands to the credit of the respective funds. The section concluded as follows:

"All such district taxes collected and paid to the county treasurers as aforesaid shall be received by said treasurers in their official capacity, and they shall be responsible for the safe keeping, disbursement and payment thereof the same as for other moneys collected by them as such treasurers."

Sec. 20 of the act is as follows:

"The revenue laws of this state for the assessment levying and collection of taxes on real estate for county purposes, except as herein modified, shall be applicable for the purposes of this act, including the enforcement of penalties and forfeiture for delinquent taxes."

The moneys collected by the county treasurer for district taxes, whether the district is in one or more counties, comes clearly within the description of money upon which the county treasurer by sec. 2537 was required to charge and receive a commission. There is nothing in the act of 1901 which says that such commission shall not be charged. On the contrary, as shown by the above synopsis of and quotation from sec. 19 and sec. 20, these district taxes were to be collected and paid to the county treasurers and received by them in their official capacity. It was made the duty of the county treasurer of each county comprising an irrigation district to collect and receipt for taxes "in the same manner and at the same time as is

required in the receipt for and collection of taxes upon real estate for county purposes," and the revenue laws of the state for the collection of taxes on real estate were made applicable. In short, the act made no distinction between the collection of irrigation district taxes and other taxes, whether for county, city, town or school purposes, so far as the treasurer was concerned.

In 1905, the legislature passed another act, entitled, "An act in relation to irrigation districts." Sec. 21 of that act, with the exception of a few verbal changes of no importance here, is identical with sec. 19 of the act of 1901, except that to the section was added a proviso as follows: "Provided, Said county treasurer shall not receive any commission for the collection of said district taxes, or any extra compensation for acting as such district treasurer, other than the regular salary as such county treasurer of his respective county." This proviso is plain. By it the commissions for the collection of district taxes provided by sec. 2537 were not to be charged, and the district treasurer was to receive no extra compensation for his services as such, but the regular salary as county treasurer was to compensate him for all services rendered as county treasurer and as district treasurer, if he happened to be district treasurer also.

In 1907, sec. 21 of the act of 1905 was amended with a few verbal changes not important here, and with the proviso changed to read as follows: "Provided, said county treasurer shall receive as his sole compensation for the collection of such taxes, such amount as the board of directors may allow, to be not less than twenty-five dollars ($25.00), nor more than one hundred dollars ($100.00), which compensation shall be considered as a part of the regular salary of such county treasurer as provided by law." This last proviso is somewhat confusing if the word "compensation" is to be taken in the

strict sense it has in the salary act. There is a marked difference between the fees and the commissions which the county treasurer is required to charge by law and his salary or compensation. As has been said, the one is charged for the purpose of creating a fund out of which the salary or compensation is paid. The proviso says that the county treasurer shall receive, as his sole compensation for the collection of district taxes, an amount fixed by the board of directors, not less than $25.00, nor more than $100.00. Then it says that this compensation shall be considered as a part of the regular salary of such county treasurer as provided by law. The only way it can become a part of the regular salary of the county treasurer is to treat it as a fee collected by him to go into his Fee Fund and from thence it will be received by him as a part of his regular salary or compensation. If the proviso had said "which compensation shall be considered as an addition to the regular salary of such county treasurer as provided by law," then the amount allowed by the board of directors would be salary, compensation. But if it is to be a part of his regular salary it must be considered as a fee, for his regular salary is not increased, and that being so it cannot be a part of his regular salary unless it is treated as compensation in the sense that a fee would be compensation under our statute. It is, therefore, a fee and it is the only fee that can be charged. The proviso in the act of 1907 changed sec. 2537 and sec. 21 of the act of 1905 with regard to the fee and commission to be charged for the collection of district taxes. It seems to be very plain that to May 3, 1905, the date when the act of that year took effect, the regular commission required to be charged by sec. 2537 for the collection of district taxes should have been charged, else the proviso in the act of 1905 that no commission should be charged was useless; that from the latter date to the day that the act of 1907 took effect no

fee or commission was to be charged, and that since the amendment in the act of 1907 a fee for the collection of those taxes, as well as for all other work done by the county treasurer for the district, was to be charged by the treasurer as provided in that act and no more. The district court was therefore right in allowing commission on district taxes collected during the period to May 3, 1905, and denying any such commission thereafter.

We will now discuss the question of commissions on moneys received from the sale of district bonds. Take for example a district that extends into three counties. The treasurer of the county in which the office of the district is located is the district treasurer. Neither of the two other county treasurers is a district treasurer for that district. Each of the two other county treasurers must, however, collect the district taxes in his county, and remit them to the one who is district treasurer. The latter, as county treasurer, must also collect the district taxes in his county. He places the taxes collected by him and those remitted to him by the two other treasurers in the fund of the district. If there is a sale of bonds of the district the other two treasurers would not receive any of the proceeds. It would all go to the county treasurer who is the district treasurer, and it would go to him, not because he is county treasurer, but because he is district treasurer. If the law had made some other person district treasurer than a county treasurer, and had said, as it does, that the district treasurer should receive and receipt for all the moneys of the district, none of the county treasurers who collect the district taxes would ever receive any of the proceeds of the bonds. If the district is in one county only, the same is true, the treasurer would receive the proceeds of the sale of bonds in his *ex-officio* capacity as district treasurer. It is plain from this that the proceeds of the sale of bonds does not come into the hands of the county treasurer as moneys

other than taxes mentioned in sec. 2537, for it is not money received by the county treasurer, but by him in his ex-officio capacity as district treasurer, a capacity which did not exist at the time the section was passed. Even though it be regarded as money received by the county treasurer in his official capacity as such, it is not such money as it was intended to charge a commission on.

In *Mitchell v. Wheeler,* 20 Colo. App. 159, 77 Pac. 361, it was held that the county treasurer is not entitled to a commission on money paid into his hands for the redemption of land sold to individuals for delinquent taxes, nor to charge any fee for entering on his books an assignment of a certificate of purchase. It was contended in that case that the statute authorized commissions on money paid in redemption of property from tax sales by virtue of the clause in sec. 2537, "for receiving all moneys other than taxes in counties of every class one per cent." The court said:

"This commission is not intended to apply to moneys paid to the treasurer on account of redemption from tax sales, but is intended to apply to moneys received by the treasurer on account of licenses, and from other sources of revenue."

Taxes, licenses, etc., are revenue. District taxes are revenue, but it cannot be said that money derived from the sale of bonds for which a district becomes indebted is a revenue in the sense of taxes, licenses, etc., which was the sense intended by sec. 2537. In *School District v. Cole,* 4 Wash. 395, 30 Pac. 448, it was held that a county treasurer, who by statute was made *ex-officio* treasurer of a school district of his county, was not entitled to a commission or percentage for receiving and disbursing the proceeds of certain school bonds of the district, whether he acted in the performance of such duties as the treasurer of the county, or of the district.

Since the irrigation act provides that the bond of the county treasurer, as such, shall also cover his acts as district treasurer, we do not cite the Washington case with the idea of asserting that the office of district treasurer and the office of county treasurer are two separate and distinct offices, but only for the purpose of showing that the moneys received from the sales of bonds of the district are not the moneys referred to in sec. 2537 upon which a commission can be charged.

We will next take up the constitutional questions as raised. It is contended that the construction given to the proviso of the act of 1907 renders it obnoxious to sec. 15 of art. XIV of the constitution. This section provides that for the purpose of providing for and regulating the compensation of county and precinct officers the general assembly shall, by law, classify the counties according to population, and grade, and fix the compensation of the officers accordingly, and that "Such law shall establish scales of fees to be charged and collected by such of the county and precinct officers as may be designated therein for services to be performed by them, respectively, and where salaries are provided, the same shall be payable only out of the fees actually collected in all cases where fees are prescribed. All fees, perquisites and emoluments above the amount of such salaries, shall be paid into the county treasury." It is said that the proviso delegates to the board of directors of the irrigation district the power to fix the fee therefor, and also the power to fix the compensation of county officers. It is also contended that the construction given to the provisos in the acts of 1905 and 1907 renders them obnoxious to sec. 14 of art. II, which provides that private property shall not be taken for private use except as therein provided. It is contended that to place the entire burden upon the county to pay for work occasioned by and beneficial to only a part of the county is the taking, for private pur-

poses, of the property of taxpayers not in the district, contrary to the constitution. While the constitution says that the general assembly shall establish scales of fees, yet it leaves the kind of scale and the amount of fees altogether to the general assembly, and leaves the particular subject of a particular fee largely to the discretion of that body, seemingly limiting it only to subjects within the services performed by the officer; that is, for instance, the fees of the county treasurers are based upon services which he performs. He is allowed a commission on moneys collected by him, a specific sum for certificates of purchase, for a tax deed, certificates of redemption, etc. The constitution does not say that, in the scale of fees, a fee shall be fixed for each and every act which an officer does. The proviso of 1907 does establish a fee for the particular services required by the act to be performed by the treasurer and fixes its minimum and maximum. It does not leave the matter entirely to the board of directors. The act of 1895 specifically said that no fee shall be collected for the particular service of the treasurer performed for an irrigation district. So it appeared that it was the discretion of the general assembly of that year not to include that particular subject for a fee in the scale of fees. The proviso of 1907 does provide that the irrigation district shall pay for the services of the treasurer. The legislature, in its discretion, said that it should pay not less than twenty-five dollars nor more than one hundred dollars. By this act, a district does pay directly for the extra work occasioned by it. The amount of the fee was not fixed in the constitution. In the act of 1895 no fee is charged to the district, and the extra expense, if any, occasioned to the county by the irrigation district is borne apparently by the entire county—those within the irrigation district as well as those without it. The general assembly might well have thought that there would be such an advance in the

amount and value of taxable property in an irrigation district occasioned by the irrigation of lands that the total valuation of the county would be so much enlarged that the extra expense, if any, occasioned by the increase of work in the treasurer's office, would be more than met without increase of levy, and that in this way taxpayers outside of the district would in reality pay nothing on account of the extra expense. Who can say that this would not be so? It is thus seen that the existence of the facts, upon which the argument for unconstitutionality is based, is shrouded in much doubt, to say the least. This being so, the argument must fall, for the unconstitutionality of a statute, as has been many times said by this court, must be made to appear beyond all reasonable doubt. The judgment is affirmed.

*Judgment affirmed.*

Decision *en banc.*